SUN OIL COMPANY, Petitioner,

v.

WORKERS' COMPENSATION
APPEAL BOARD (CAR-
ROLL), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 9, 2002.

Decided Dec. 10, 2002.

Charles S. Katz, Philadelphia, for peti-
tioner.

No appearance entered on behalf of re-
spondent.

BEFORE: COLINS, President Judge,
SMITH–RIBNER, Judge, PELLEGRINI,
Judge, LEADBETTER, Judge, COHN,
Judge, SIMPSON, Judge, and LEAVITT,
Judge.

OPINION BY Judge LEAVITT.

Sun Oil Company (Employer) petitions
for review of an adjudication of the Work-
ers' Compensation Appeal Board (Board).
The Board affirmed the decision of the

Workers' Compensation Judge (WCJ)[1] to grant benefits to Wilford Carroll (Claimant) for his hearing loss, including a ten-week healing period, even though Claimant had retired prior to discovering his hearing loss was work-related. We affirm the Board in part and reverse in part.

Claimant worked for Employer from 1945 until March 5, 1985, when he retired. On June 23, 1986, Claimant filed a claim petition against Employer, alleging that he suffered a loss of hearing due to his exposure to noise hazards throughout his service with Employer. Employer filed an answer to the claim petition, denying all material allegations, and a hearing was conducted by the WCJ.

Claimant testified that he was subjected to the noise generated by jack hammers, pumps, and turbines in the workplace, and now he has difficulty hearing. Claimant also offered the testimony of Deborah A. Perlstein, M.D. (Dr. Perlstein), who specializes in otorhinolaryngology but is not board-certified. Dr. Perlstein testified that she first examined Claimant on April 10, 1986; at that visit, she diagnosed Claimant's hearing loss and informed Claimant that it had been caused by his exposure to noise in the workplace. Dr. Perlstein further testified Claimant had suffered a complete loss of hearing for all practical intents and purposes.

In response, Employer offered the testimony of Joseph Sataloff, M.D. (Dr. Sataloff), who is board certified in otolaryngology and specializes in noise-induced hearing loss. Dr. Sataloff testified that his examination of Claimant confirmed a hearing loss, which may have been caused by exposure to noise, but it was not a complete loss of hearing for all practical intents and purposes.

On November 7, 1989, the WCJ issued an opinion and order, in which he found Claimant and Dr. Perlstein credible and convincing and concluded that Claimant had suffered a loss of hearing for all practical intents and purposes as a result of his exposure to noise in the workplace. The WCJ found that the disability began on May 1, 1986, and ordered Employer to begin payment as of May 1, 1986.[2]

Both parties appealed the WCJ's decision. On April 1, 1992, the Board reversed and remanded the matter to the WCJ because: (1) there was no evidence in the record to support the claim that Claimant's hearing loss occurred on May 1, 1986; (2) the WCJ had not made a finding on the issue of notice to Employer of Claimant's disability; and (3) the WCJ's award of medical and litigation costs were not specific.

On November 2, 1992, the WCJ issued a new order and opinion (Second Decision), which again granted Claimant's claim petition. This time the WCJ found that the injury occurred on the date of Claimant's last day of work, March 5, 1985, and ordered Employer to begin payment as of

---

**1.** At the time that these proceedings were instituted, WCJs were known as "referees." Pursuant to the 1993 amendments to the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626, the nomenclature changed to "WCJ." This Court uses the term "WCJ" to refer to the fact finder who presided over all hearings whether they took place before or after the effective date of the 1993 amendments.

**2.** The WCJ's Conclusion of Law No. 2 states that Claimant's hearing loss began on May 1, 1986 because that is the date asserted by Claimant in his claim petition. In Conclusion of Law No. 3, however, the WCJ directed Employer to pay Claimant benefits beginning May 5, 1986, but then in his order stated payment should begin on May 1, 1986. *See* WCJ's Opinion and Order circulated November 7, 1989.

that date for a period of 260 weeks plus a healing period of ten weeks, together with ten percent interest on compensation paid after June 23, 1986, the date Claimant gave notice to Employer of his injury by filing a claim petition. Employer was also directed to pay medical and litigation expenses that were reasonable, necessary and related to the claim petition.

Employer appealed the Second Decision to the Board asserting, *inter alia*, that the WCJ made findings of fact unsupported by substantial evidence and that the WCJ erred in his application of the notice requirements of Section 311 of the Act, 77 P.S. § 631. The Board vacated the WCJ's decision that the date of Claimant's injury was March 5, 1985.[3] Instead, the Board determined Claimant's date of injury to be April 10, 1986, when Claimant was first informed by Dr. Perlstein that his hearing loss was related to his employment. The Board also reversed that part of the WCJ's order awarding Claimant interest from June 23, 1986, and remanded the case to the WCJ to award interest, if applicable, from the date that the Board determined Employer was given notice of Claimant's injury. In addition, the Board reversed the WCJ's award of a ten-week healing period to Claimant. The Board explained that, on remand, the WCJ should allow Employer to present rebuttal evidence with respect to the healing period.

On April 22, 1998, the WCJ issued his third decision. Again, he found in favor of Claimant, incorporating by reference the Second Decision, and, in addition, ordered Employer to pay litigation expenses. Employer appealed to the Board, and the Board, on December 1, 2000, affirmed the third decision of the WCJ. Employer then petitioned for this Court's review.[4]

On appeal, Employer[5] raises the following issues before this Court: (1) whether the Board lacked jurisdiction to decide Claimant's date of injury since neither party appealed that finding of the WCJ; (2) whether the WCJ and the Board erred in ordering the payment of benefits to Claimant before Employer had notice of the injury; (3) whether the WCJ erred in awarding a healing period when Claimant was retired; and (4) whether the WCJ erred by awarding litigation costs.

■ Employer first challenges the Board's decision to change the date of Claimant's injury from March 5, 1985 to April 10, 1986. The earlier date of March 5, 1985 has the potential to defeat any claim for compensation because Claimant did not report his injury to Employer until July 8, 1986, the date on which the claim petition was circulated. Employer asserts that it did not appeal[6] the WCJ's finding

---

3. The Board actually wrote "May 5, 1985," but it is obvious that it intended "March 5, 1985," the last day of Claimant's employment.

4. Our standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

5. Claimant filed a notice of non participation; accordingly, only Employer's brief was sub-

mitted to this Court for disposition on brief without oral argument.

6. Employer also asserts that Claimant did not appeal the WCJ's second order of November 2, 1992. *See* Employer's Brief at 9. The Board's December 24, 1997, opinion explains that both parties appealed the WCJ's November 2, 1992, order. (*See* Board Opinion, December 24, 1997, at 4). There is no evidence in the record that Claimant appealed from the WCJ's November 2, 1992 decision; however, an appeal of Claimant is a document listed in the certified record's table of contents as one

as to the date of injury, and, therefore, the Board lacked authority to revise the WCJ's finding in this regard. After a careful review of the record, we do not agree that the issue of the date of injury was not appealed.

Employer's appeal from the WCJ's Second Decision stated that the WCJ's findings lacked substantial evidence, including, specifically, the WCJ's finding that Claimant first became aware that his hearing loss was caused by his employment on April 10, 1986, the date of his examination by Dr. Perlstein. Employer also asserted in its appeal that the WCJ failed to decide all of the issues raised by the evidence, including the date on which Claimant, by the exercise of reasonable diligence, should have known of his hearing injury. Finally, in its brief filed with the Board, Employer challenged the WCJ's failure to make a finding on the date of Claimant's injury or the date on which Claimant should have known he had suffered a compensable injury.

Employer's argument that the Board was not presented with the issue of Claimant's date of injury is not supported by the record. Accordingly, Claimant's date of injury of April 10, 1986, as found by the Board, stands.

 Employer next contends that the WCJ and the Board erred by ordering the payment of benefits to Claimant to begin prior to the Employer receiving notice of the injury. Section 311 of the Act[7] requires a claimant to give notice of an injury to an employer within twenty-one days of its occurrence. However, Section 311 also provides that the duty to give notice does not begin to run until the employee knows of the injury[8] and its "possible relationship to his employment." 77 P.S. § 631.

Here, Dr. Perlstein informed Claimant on April 10, 1986, that his hearing loss was work-related; therefore, April 10, 1986 is the date of Claimant's injury and the date on which Claimant's duty to give notice to Employer arose.

 A claimant gives notice to Employer of the work-related injury on the date a claim petition is circulated. In *Arbogast & Bastian, Inc. v. Workmen's Compensation Appeal Board (Bauer)*, 79 Pa.Cmwlth.364, 468 A.2d 1220, 1221 (1984), the employer argued that "the mere *filing* of the claim petition was insufficient notice of the injury under Section 311 of the Act, 77 P.S. § 631." This Court agreed because Sec-

of the documents that should be contained in the record.

7. Section 311 of the Act provides as follows:
Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, *no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.* However, in cases of injury resulting from ionizing radiation *or any other cause in which the nature of the injury or its relationship to the em-*

*ployment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment....*
77 P.S. § 631 (emphasis added).

8. *See, e.g., B.P. Oil Co. v. Workmen's Compensation Appeal Board (DeFrank)*, 158 Pa. Cmwlth.8, 632 A.2d 585 (1993), *petition for allowance of appeal denied*, 538 Pa. 675, 649 A.2d 676 (1994) (stating that, in hearing loss cases, this Court has consistently held that the date of injury is the date when a physician informs the claimant of the nature and extent of his hearing loss and that is also the date when the statute of limitations begins to run).

tion 406 of the Act, 77 P.S. § 717, provides that "notices and copies to parties shall be deemed served on the date when mailed." *Id.* at 1222. Here, Claimant's claim petition was mailed, or circulated, on July 8, 1986, which is well within 120 days of April 10, 1986, as required by Section 311. Accordingly, Claimant was entitled to have his benefits begin on July 8, 1986.

■ Employer next argues that Claimant's award should have been reduced by seventy weeks, which represents the time between March 5, 1985 (the last day of Claimant's employment and the date the WCJ ordered Claimant's benefits to begin) and July 8, 1986 (the date Employer received notice *via* the circulation of the claim petition). In other words, Employer argues that Claimant should forfeit seventy weeks out of the 260 weeks awarded. In this contention, Employer relies upon *Martincic v. Workmen's Compensation Appeal Board (Greater Pittsburgh International Airport)*, 108 Pa.Cmwlth.238, 529 A.2d 600 (1987). We disagree that *Martincic* requires this result.

In Martincic, this Court explained that, for purposes of appellate review, it is necessary for the WCJ to find when a claimant knows or should know of his or her injury. Under Section 311 if "the claimant gives notice after the 21 days has elapsed but within 120 days of the date he knew or should have known of his injury, *compensation is then payable from the date that notice was given.*" *Id.* at 602 (emphasis added). Martincic, however, involved a claimant who was disabled from asbestosis, a continuing disability, and it does not stand for the proposition that a Claimant's *fixed* benefit of 260 weeks for a complete loss of hearing should be, to any extent, forfeited if notice is not given within twenty-one days. Although Claimant's benefits should not have begun before July 8, 1986,

he is nevertheless entitled to a complete award of 260 weeks as of that date.

■ Employer next argues that the Board erred by awarding a ten-week healing period to Claimant. Section 306(c)(25) of the Act, provides, in pertinent part, as follows:

In addition to the payments hereinbefore provided for permanent injuries of the classes specified, *any period of disability necessary and required as a healing period shall be compensated* in accordance with the provisions of this subsection. The healing period shall end (i) *when the claimant returns to employment without impairment in earnings*, or (ii) on the last day of the period specified in the following table, whichever is the earlier:

. . . .

For the loss of hearing, ten weeks.

77 P.S. § 513(25) (emphasis added). The question is whether Claimant, who was retired when he sought benefits of his hearing loss, is entitled to benefits for a "healing period" when he does not intend to return to work.

In *Sun Oil Co. v. Workmen's Compensation Appeal Board (Davis)*, 144 Pa. Cmwlth.51, 600 A.2d 684, 686 (1991), the employer asserted that the claimant was not entitled to a ten-week healing period under Section 306(c)(25) of the Act, 77 P.S. § 513(25), because he did not suffer a loss of earnings due to his voluntary retirement. This Court reasoned that a claimant must prove a loss of earnings to collect partial or total disability benefits under Sections 306(a)-(b) of the Act. Section 306(c), 77 P.S. § 513(25), however, does not require the claimant to show a loss of earnings. The loss of earnings is presumed by the claimant's showing of a specific loss, and, therefore, a claimant does not have to show an actual impairment of

earning capacity to qualify for the healing period of benefits provided under Section 306(c)(25) of the Act, 77 P.S. § 513(25).

In *Sellari v. Workmen's Compensation Appeal Board (NGK Metals Corp.)*, 698 A.2d 1372 (Pa.Cmwlth.1997), we clarified our *Sun Oil* holding. We stated that "[a]lthough *Sun Oil* holds that a claimant is entitled to a *presumption* that the specific loss entitles him or her to the healing period prescribed under Section 306(c)(25) of the Act, such a presumption is *rebuttable.*" *Id.* at 1377 (emphasis the Court's). Thus, entitlement to a healing period is not automatic, but it is employer's burden to present evidence to rebut the presumption of the claimant's entitlement to a healing period.

The healing period is for "any period of disability necessary and required" for healing; it ends when a claimant returns to work. Section 306(c)(25) of the Act, 77 P.S. § 513(25). Because Claimant was retired *before* his specific loss benefits began, he did not require a period for healing. He will not return to work because he is retired, not because of his hearing loss. Employer offered Claimant a special retirement package with increased benefits, which he accepted. As stated by Claimant: "I just took advantage of the opportunity. I just took advantage of an opportunity to do that while I could." Reproduced Record 53 (R.R. ____). In short, Claimant did not retire because of his hearing loss, and he does not need a healing period to recover from his disability. We conclude, therefore, that Employer rebutted the presumption of Claimant's entitlement to a healing period, and we reverse the Board in its holding to the contrary.

■ Finally, Employer contends that the Board erred by affirming the WCJ's award of litigation expenses to Claimant. Employer asserts that Claimant failed to submit his expenses in conjunction with the original claim petition, and, despite this, the WCJ *sua sponte* awarded litigation expenses to Claimant.

In its December 24, 1997 decision, the Board remanded the case to the WCJ to allow Claimant to resubmit litigation expenses and for the WCJ to make findings of fact and conclusions of law in that regard. Board Opinion, December 24, 1997, at 8. In his January 5, 1998 decision, the WCJ found that Claimant submitted the following litigation expenses:

| | | |
|---|---|---|
| 2/18/88 | Foster Court Reporting | $130.40 |
| 5/23/88 | Brad Tratenberg Reporting | 86.30 |
| 9/15/88 | Dr. Deborah Perlstein | 450.00 |
| 9/15/88 | Dr. Deborah Perlstein | 50.00 |
| 8/10/87 | Commonwealth Reporting Company, Inc. | 80.00 |
| 4/18/89 | Dr. Deborah Perlstein | 600.00 |
| 4/20/89 | Varallo–Alfe Reporting | 167.40 |
| 3/02/89 | Brad Tratenberg Reporting | 107.80 |
| 3/09/89 | Brad Tratenberg Reporting | 35.94 |

*See* WCJ Opinion, January 5, 1998, at 3. The WCJ further concluded that Claimant met his burden in establishing the costs of litigation and his right to their reimbursement. Employer had the opportunity to contest those costs. We may not disturb the WCJ's factual findings inasmuch as they are supported by substantial evidence.

For these reasons, the Board's decision is affirmed in part and reversed in part.

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, this 10th day of December, 2002, the order of the Workers' Compensa-

tion Appeal Board, dated December 1, 2000, in the above-captioned matter is hereby affirmed in part and reversed in part, in accordance with the attached Opinion.