# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jose Osorio Lozado, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 21 C.D. 2014 |
| | : | |
| Workers' Compensation Appeal | : | Argued: May 6, 2015 |
| Board (Dependable Concrete Work | : | |
| and Uninsured Employers Guaranty | : | |
| Fund), | : | |
| | : | |
| Respondents | : | |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                         **FILED:  August 5, 2015**

Jose Osorio Lozado (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) affirming the Decisions of a Workers' Compensation Judge (WCJ) denying Claimant's "Claim Petition for Benefits from the Uninsured Employers Guaranty Fund [Fund] and Uninsured Employer" (Claim Petition).  The WCJ denied Claimant's Claim Petition because

Claimant failed to provide timely notice to the Fund that his former employer, Dependable Concrete Work (Employer), was uninsured and because, after providing notice to the Fund, Claimant did not wait the requisite time period before filing his Claim Petition against the Fund. The Board affirmed on different grounds, holding that Section 305(d) of the Workers' Compensation Act[1] (Act) barred the Claim Petition because Claimant had previously elected to pursue an action at law against Employer. For the reasons that follow, we reverse and remand to the Board for further proceedings.

## I.     The Uninsured Employers Guaranty Fund

We begin with a brief description of the Fund and the governing provisions of the Act.[2] The Fund was created in 2006 to provide workers' compensation benefits to workers, injured in the course and scope of their employment, where their employers did not have workers' compensation insurance. Section 1602(c) of

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 501(d). Section 305(d) provides that "[w]hen any employer fails to secure the payment of compensation under this act as provided in sections 305 and 305.2, the injured employe or his dependents may proceed either under this act or in a suit for damages at law as provided by article II." Id.

[2] The Fund was created by Act 147 of 2006, which added Article XVI to the Act. See Sections 1601-1608 of the Act, added by Section 7 of the Act of November 9, 2006, P.L. 1362, as amended, 77 P.S. §§ 2701-2708. There is limited case law addressing the Fund's functions and procedures. See, e.g., Trautman v. Workers' Compensation Appeal Board (Blystone Tree Service and Pennsylvania Uninsured Employers Guaranty Fund), 104 A.3d 600 (Pa. Cmwlth. 2014) (addressing the Fund's liability for unreasonable contest fees); Pennsylvania Uninsured Employers Guaranty Fund v. Workers' Compensation Appeal Board (Lyle), 91 A.3d 297 (Pa. Cmwlth. 2014) (holding that when an employee learns that an employer is uninsured is a question of fact); Pennsylvania Uninsured Employers Guaranty Fund v. Workers' Compensation Appeal Board (Dudkiewicz), 89 A.3d 330 (Pa. Cmwlth. 2014) (addressing joinder of parties).

the Act, 77 P.S. § 2702(c).[3]  The Fund is financed through assessments upon insurers and self-insured employers, reimbursements or restitutions recovered by the Fund, interest on money held by the Fund, and infusions of cash from the treasury.  Section 1602(b) of the Act, 77 P.S. § 2702(b); Section 1607(b) of the Act, 77 P.S. § 2707(b).[4]

The Fund is not an insurer and is "not [] subject to penalties, unreasonable contest fees or any reporting and liability requirements under section 440"[5] of the

_____

[3] The purpose of the Fund is set forth in Section 1602(c) of the Act, which states:

> The administrator shall establish and maintain the fund for the exclusive purpose of paying to any claimant or his dependents workers' compensation benefits due and payable under this act and the act of June 21, 1939 (P.L. 566, No. 284), known as The Pennsylvania Occupational Disease Act, and any costs specifically associated therewith where the employer liable for the payments failed to insure or self-insure its workers' compensation liability under section 305 at the time the injuries took place.

77 P.S. § 2702(c).

[4] Subsection (b) of Section 1607 was added by Section 3 of the Act of June 30, 2011, P.L. 86, 77 P.S. § 2707(b).  This section was intended to be a temporary infusion of cash into the Fund.  David B. Torrey & Andrew E. Greenberg, Workers' Compensation in Law and Practice § 11:40 (2008, Supp. 2014).

[5] 77 P.S. § 996, added by Section 3 of the Act of February 8, 1972, as amended.  Section 440 states, in its entirety:

> (a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fees, witnesses, necessary

*(Continued…)*

3

Act; however, it does have "all of the same rights, duties, responsibilities and obligations as an insurer." Sections 1601 and 1602(e) of the Act, 77 P.S. §§ 2701, 2702(e). An injured worker may recover from the Fund by first providing the Fund with notice of a claim "within 45 days after the worker knew that the employer was uninsured." Section 1603(b) of the Act, 77 P.S. § 2703(b). The Fund must start its inquiry into whether to commence making payments to an injured employee within ten days of receiving notice of a claim by demanding proof of insurance for the injured worker from the employer. Section 1605(a) of the Act, 77 P.S. § 2705(a). If the Fund does not receive proof of insurance within 14 days, "there shall be rebuttable presumption of uninsurance." 77 P.S. § 2705(a). If the claim is not voluntarily accepted by the Fund within 21 days of receiving notice of the claim, an injured worker may file a claim petition with the Bureau of Workers' Compensation (Bureau). Section 1603(d) of the Act, 77 P.S. § 2703(d). The claim petition must name "both the employer and the [F]und as defendants." Section 1604 of the Act, 77 P.S. § 2704.

---

medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

(b) If counsel fees are awarded and assessed against the insurer or employer, then the workers' compensation judge must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended. If the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fees shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

Id.

4

The Fund is required to "exhaust all remedies at law" to seek reimbursement from the uninsured employer for any payments made by the Fund as a result of an award or a voluntarily accepted injury. Section 1605(b) of the Act, 77 P.S. § 2705(b). The Department of Labor and Industry may, on the Fund's behalf, investigate, prosecute, and seek restitution from an uninsured employer for not insuring the payment of compensation. Id. The Fund may also seek reimbursement through asserting its right to subrogation over any recovery an injured employee receives from the employer or a third party. Section 1606 of the Act, 77 P.S. § 2706.

## II.    Procedural History

This case involves two simultaneously issued WCJ Decisions (hereinafter referred to as "Employer Decision" and "Fund Decision"). The Employer Decision resulted from a claim and penalty petition which Claimant filed against Employer on April 15, 2009, in which Claimant sought benefits for "a work injury suffered on or about May 11, 2007." (WCJ Decision (Employer Decision), Findings of Fact (FOF) ¶ 1.) After it was filed, on April 28, 2009, the Bureau informed Claimant's counsel that its "research indicate[d] that the employer did not have workers' compensation insurance on the date of the alleged injury." (WCJ Decision (Fund Decision), FOF ¶ 2.) Shortly thereafter, on May 11, 2009, the last day Claimant could file a personal injury action within the applicable two year statute of limitations period, Claimant filed a praecipe for a writ of summons with the Prothonotary of the Philadelphia County Court of Common Pleas (trial court) seeking damages from Employer for his injury. (Employer Decision, FOF ¶ 2; Civil Docket at 3, R.R. at 15a.) Pursuant to Section 7361 of the Judicial Code,

5

42 Pa. C.S. § 7361, and local rule, this matter was referred to compulsory arbitration. (Civil Docket at 7, R.R. at 19a.)

The Fund Decision resulted from a "Notice of Claim Against Uninsured Employer" (Notice of Claim) and the Claim Petition at issue here, both of which Claimant filed in January 2010[6] while resolution of the Claimant's tort action was pending, in which Claimant sought benefits from the Fund for the alleged May 11, 2007 work-related injury. (Fund Decision, FOF ¶¶ 3, 4.) While the petitions against both Employer and the Fund were pending, the arbitrator in Claimant's tort action against Employer awarded Claimant a default judgment of $50,000 in damages on May 28, 2010. (Employer Decision, FOF ¶ 5.) Claimant appealed the arbitration award for a *de novo* trial in the trial court shortly thereafter. (Civil Docket at 8, R.R. at 20a.)

Claimant's Claim Petition against the Fund and the claim and penalty petitions against Employer were assigned to the same WCJ for disposition. (Fund Decision, FOF ¶ 5.) The WCJ issued two separate decisions and orders denying and dismissing both of Claimant's petitions - against Employer *and* against the Fund. With regard to Claimant's claim and penalty petitions against *Employer*, the WCJ reasoned that Section 305(d) of the Act, 77 P.S. § 501(d), requires a claimant to choose between pursuing a tort remedy and seeking benefits under the Act.

---

[6] Claimant's Claim Petition was filed on January 5, 2010. (Claim Petition for Benefits from the Uninsured Employer Guaranty Fund and Uninsured Employer, R.R. at 6a-7a.) The Notice of Claim does not appear in the certified record; however, the Fund admitted in its Answer to the Claim Petition that Claimant filed the Notice of Claim on January 25, 2010. (Answer to Claim Petition ¶ 1, R.R. at 10a.)

6

(Employer Decision, Conclusions of Law (COL) ¶¶ 1-3.) According to the WCJ, once an injured employee files a civil action, he forfeits his ability to seek benefits under the Act. (Employer Decision, COL ¶¶ 2-3.) With regard to Claimant's Claim Petition against the *Fund*, the WCJ denied relief for two reasons: 1) because Claimant did not file the Notice of Claim within 45 days of learning that Employer was uninsured as required by Section 1603(b) of the Act; and 2) because Claimant filed his Claim Petition against the Fund concurrently with the Notice of the Claim instead of waiting 21 days as required by Section 1603(d) of the Act. (Fund Decision, COL ¶¶ 1-4.)

Claimant appealed both WCJ Decisions, which were consolidated by the Board on appeal. Upon review, the Board affirmed both Decisions. The Board held that Section 305(d) of the Act barred all of Claimant's petitions because Claimant forfeited his ability to pursue a remedy against both Employer and the Fund under the Act by initiating his tort action. With respect to its holding that Section 305(d) barred Claimant's Claim Petition against the Fund, the Board reasoned that the Fund was "established for the exclusive purpose of paying to any claimant . . . benefits due and payable under the Act," and Claimant is not due any benefits because he elected a civil remedy. (Board Decision at 5.) Although the Board ultimately concluded that Claimant's Claim Petition against the Fund was barred by Section 305(d), the Board also determined that the WCJ erred by concluding that a claimant's failure to file notice within 45 days of learning that an employer is uninsured, as required by Section 1603 of the Act, completely bars a claim against the Fund. (Board Decision at 4.) According to the Board, Section 1603 of the Act "does not act as a complete bar to compensation, but instead bars

the claimant from receiving compensation until such time as he has provided [the Fund] with notice." (Board Decision at 4.) The Board further declined "to interpret Section 1603 as barring a claimant from receiving compensation where he fails to follow the 21 day waiting period for filing his claim petition" against the Fund because the plain language of Section 1603 did not provide for such a bar. (Board Decision at 4.)

### III. Claimant's Appeal

Claimant now petitions this Court for review of the Board's Order only with respect to the Board's affirmance of the WCJ's Fund Decision dismissing Claimant's Claim Petition against the Fund.[7] The Board's affirmance of the WCJ's Employer Decision dismissing Claimant's claim and penalty petitions against Employer is not before this Court.

This appeal presents two issues of first impression. First, whether a claim petition against the Fund is barred by Section 305(d) of the Act where, after learning that an employer is uninsured, a claimant preserves a civil remedy by filing a "savings action" at law against an uninsured employer. Second, whether a claimant's failure to give timely notice to the Fund that his or her employer is uninsured acts as a complete or partial bar to a claim against the Fund.

---

[7] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.), 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007). Our review is plenary when examining questions of law. Land O'Lakes, Inc. v. Workers' Compensation Appeal Board (Todd), 942 A.2d 933, 936 n.3 (Pa. Cmwlth. 2008).

8

**A. Whether Claimant's Claim Petition is barred by Section 305(d) of the Act**

Since the Act was amended in 1974, it has served as a complete substitute for common law tort actions by "provid[ing] the exclusive means by which a covered employee can recover against an employer for injury in the course of his employment." Kline v. Arden H. Verner Company, 469 A.2d 158, 159 (Pa. 1983). Section 303(a) of the Act establishes that an employer's liability under the Act is exclusive and an employer is immune from suit under the common law. 77 P.S. § 481(a). Our Supreme Court has described this provision as

> a version of the historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action. . . . The 1974 change in the statutory formulation of the exclusivity principle reflects another, even larger change which the legislature made that same year: a change from an elective system of workmen's compensation, as existed before, to one that is mandatory. Since, by the express language of section 303(a), the statutory compensation is "*in place of any and all other liability*" on the part of the employer for a worker's injury in the course of employment, the conclusion must follow that the section denies a worker any cause of action at law against his employer for such an injury. So strong is the principle of exclusivity we have held that it is a nonwaivable defense, even when not timely raised.

Lewis v. School District of Philadelphia, 538 A.2d 862, 867 (Pa. 1988) (internal citations omitted).

Notwithstanding the strength of the exclusivity principle in workers' compensation law, an employer loses its immunity when it does not fulfill its obligations under the *quid pro quo* bargain and may be sued at common law where it fails to insure for workers' compensation liability. Section 305(d) of the Act, 77

9

P.S. § 501(d). Pursuant to Section 305(d): "[w]hen any employer fails to secure the payment of compensation under this act as provided in sections 305 and 305.2, the injured employe or his dependents may proceed either under this act or in a suit for damages at law as provided by article II." Id. In Liberty by Liberty v. Adventure Shops, Inc., 641 A.2d 615, 616 (Pa. Super. 1994), our Superior Court interpreted this provision as "offer[ing] the employee an election either to proceed under the Act and accept its compensation schedules or to secure relief outside the Act by an action at law for damages against his employer." Id.

The exclusivity principle, which applies to civil actions against the employer, does not foreclose civil actions seeking damages from third parties who bear some responsibility for the claimant's injuries, concurrent with proceedings against an employer under the Act. When a claimant recovers from a third party through a civil action, Section 319 of the Act[8] allows an employer to assert subrogation rights against any recovery of damages the claimant receives from a liable third party; this avoids a double recovery by the claimant while also more

---

[8] 77 P.S. § 671. Section 319 of the Act provides in relevant part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents.

Id.

10

equitably allocating the burden of compensation to those who are responsible for the injury.

The Board determined that Claimant forfeited his right to bring a claim against the Fund because Claimant pursued a civil action for damages against Employer. On appeal, Claimant and the Fund make numerous arguments. Claimant contends that the exclusivity principle does not apply at all to claims against the Fund because Section 305(d) only bars his proceeding against Employer. Claimant argues that the Fund is part of a separate scheme to compensate injured employees, which is evidenced by Section 1606 of the Act, 77 P.S. § 2706, which gives him the right file a direct suit for damages against his Employer without forfeiting his right to pursue benefits against the Fund. Section 1606 provides:

> Nothing contained in this article shall serve to abrogate the provisions of section 305(d) allowing the claimant or dependents to bring a direct suit for damages at law as provided by Article II. The fund shall be entitled to assert rights to subrogation under section 319 for *recovery made from the employer or any other third party*.

77 P.S. § 2706 (emphasis added). Claimant interprets the plain language of Section 1606 as providing the Fund with the right to subrogation against any recovery a claimant receives from an employer as it would from any other third party.

In the alternative Claimant argues that, even if the exclusivity principle would apply, in this case he did not "proceed" in a tort action against Employer within the meaning of Section 305(d). According to Claimant, he filed a praecipe

11

for a writ of summons with the trial court before he knew whether the Fund would provide compensation to him, as a "savings action" in order to preserve his rights, and the rights of any other potentially interested parties, to receive some compensation. Claimant further contends that the fact that he has stayed his tort action pending resolution of the instant matter, and has never recovered any damages, demonstrates that he did not "proceed" in his tort action.

In response, the Fund argues that the General Assembly maintained the exclusivity principle of Section 305(d) when it established the Fund and that Claimant misconstrues Section 1606 by asserting that he may bring a suit against Employer as he would a third party. The Fund asserts that it has all the rights and liabilities of an insurer and, as such, it is only liable if the uninsured employer would be liable and has defaulted on his obligation. Moreover, the Fund argues that Claimant did, in fact, "proceed" in a suit for damages at law, as that word is used in Section 305(d) of the Act, when he commenced his civil action by filing a praecipe for a writ of summons with the trial court.

We need not decide, in this case, whether the exclusivity principle applies in all cases. Even assuming, *arguendo*, that the exclusivity principle does apply, we find that, under the facts of this case, Claimant did not violate Section 305(d) when he filed a civil action to preserve his ability to recover in tort prior to the expiration of the statute of limitations. Claimant faced a practical dilemma at a time when the Fund was new and little guidance was available.[9] The statute of limitations for

---

[9] Claimant argues that he filed the civil suit against Employer out of an abundance of caution. While the Fund was new, there was experience and case law under a statute which

*(Continued…)*

12

personal injury negligence actions is *two years*, Section 5524 of the Judicial Code, 42 Pa. C.S. § 5524, while claim petitions under the Act must be filed within *three years* after the injury, Section 315 of the Act, 77 P.S. § 602. Claimant filed his claim petition against Employer on April 15, 2009, and received a letter from the Bureau alerting Claimant to the fact that its research indicated that Employer lacked insurance on April 28, 2009. (Fund Decision, FOF ¶¶ 1, 2.) Claimant had only 13 days after receiving the letter from the Bureau to file a civil action before the applicable statute of limitations had run; he filed a praecipe to issue a writ of summons the day the statute of limitations on a tort action had run. (Civil Docket, R.R. at 14a-15a.) Claimant then waited almost 11 months to file his complaint in the trial court. (Civil Docket, R.R. at 18a.) Claimant could not hold off on filing his complaint indefinitely at the risk of forfeiting his claim. See Lamp v. Heyman, 366 A.2d 882, 889 (Pa. 1976) (holding that "a writ of summons shall remain

established a plan to provide compensation for residents injured in a motor vehicle-related accident who have no available source for insurance, the Pennsylvania Financial Responsibility Assigned Claims Plan (Plan) under the Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. §§ 1751-57. Under the Plan, a resident of the Commonwealth injured in a motor vehicle-related accident may receive benefits when, "through no fault of their [sic] own, [the injured person has] no other available source of insurance coverage." Pennsylvania Financial Responsibility Assigned Claims Plan v. English, 664 A.2d 84, 86 (Pa. 1995). However, under the Plan, a civil suit *must be filed* to preserve any claims prior to receiving compensation. The Plan is solely financed through subrogation and "claimants seeking recovery from the [Plan] forfeit their right to recover from the [Plan] where the claimants extinguish the insurer's right to subrogation against a tortfeasor." Melendez v. Pennsylvania Assigned Claims Plan, 557 A.2d 767, 768 (Pa. Super. 1989). A claim may be filed with the Plan "within four years from the date of the accident," 75 Pa. C.S. § 1757(a), but a civil action must be filed within two years. Section 5524 of the Judicial Code, 42 Pa. C.S. § 5524. Given that no clarifying case law was yet issued from this Court at the time Claimant filed his civil action, Claimant likened his responsibilities under the Act to the requirements of the Motor Vehicle Financial Responsibility Law and took steps to preserve the Fund's right to subrogation out of fear that he would otherwise lose his claim under the Act.

13

effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion"). Employer did not file an answer to the complaint or appear before the arbitrator, leading the arbitrator to award Claimant a default judgment of $50,000. (Civil Docket, R.R. at 19a.) Claimant did not accept the judgment, appealed the arbitrator's award to the trial court, and later filed a motion to stay proceedings pending resolution of the instant matter, which was granted. (Civil Docket, R.R. at 20a; Trial Ct. Order, October 20, 2010.[10]) According to Claimant, he did only what was necessary to preserve his civil action under the local rules until he could determine whether he had a claim under the Act. The fact that Claimant commenced the action with a praecipe for a writ of summons, delayed filing his complaint for 11 months, and requested that his tort action be stayed pending resolution of his workers' compensation claim shows that Claimant's first choice was not to recover tort damages. Claimant has yet to recover from his civil action and has taken no steps to bring the action to final disposition.

We are mindful that, because the Act "was intended to benefit the injured employee," we must construe its provisions "liberally in the employee's favor in order to effectuate [the Act's] humanitarian objectives." Cruz v. Workers' Compensation Appeal Board (Kennett Square Specialties), 99 A.3d 398, 406 (Pa. 2014). Accordingly, "borderline interpretations will be decided in favor of the

---

[10] The trial court orders were not included in the certified record. However, "[i]t is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings where appropriate." Lycoming County v. Pennsylvania Labor Relations Board, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007).

claimant." Id. In light of the humanitarian purposes of the Act, we do not find that Claimant's actions here bar his workers' compensation claim against the Fund. Accordingly, we conclude that Claimant may maintain his workers' compensation claim against the Fund.

### B. Whether Claimant's Claim Petition is completely or partially barred by Section 1603 of the Act

We next turn to the issue of whether Claimant gave timely notice to the Fund of his claim and, if not, whether the lack of timely notice acts as a complete bar or only a partial bar to his claim against the Fund. The WCJ found that Claimant did not give timely notice to the Fund. The Board agreed, but found that the lack of timely notice would not have been a complete bar to his recovery. The applicable provision of the Act, Section 1603(b), provides that:

> An injured worker shall notify the fund within 45 days after the worker knew that the employer was uninsured. The department shall have adequate time to monitor the claim and shall determine the obligations of the employer. No compensation shall be paid from the fund until notice is given and the department determines that the employer failed to voluntarily accept and pay the claim or subsequently defaulted on payments of compensation. No compensation shall be due until notice is given.

77 P.S. § 2703(b).

Claimant argues that the WCJ erroneously found that he did not give timely notice to the Fund. Contrary to the WCJ's factual finding, Claimant asserts that the April 28, 2009 letter sent by the Bureau to Claimant's counsel did not put Claimant on notice that Employer was uninsured. Claimant contends that the WCJ disregarded conflicting evidence that clearly shows that he could not be reasonably

charged with actual knowledge that Employer was neither insured nor self-insured until at least the time he submitted his Notice of Claim to the Fund. Claimant argues further that the Board correctly rejected the WCJ's legal conclusion that a claim petition is completely barred if a claimant does not provide notice to the Fund within 45 days of learning that an employer is uninsured. Claimant asserts, however, that the Board misinterpreted Section 1603 when it held that Section 1603 permits a partial bar to compensation absent a showing of prejudice to the Fund. Claimant argues that his benefits should not be delayed because the Fund was not prejudiced by his filing the Notice of Claim beyond 45 days.[11]

In response, the Fund contends that Claimant's knowledge of Employer's lack of insurance is well established in the record. Further, the Fund argues that the WCJ was correct when she concluded that Claimant's Claim Petition against the Fund was completely barred because Claimant did not follow the statutory mandate requiring Claimant to file notice with the Fund within 45 days of learning that Employer lacked insurance. According to the Fund, the Board's holding to the contrary neglects the plain and mandatory language of Section 1603.

We first address Claimant's contention that the Board erred by concluding that Claimant did not provide the Fund with timely notice of his claim because the

_____

[11] Claimant also argues that the WCJ erred by barring his Claim Petition against the Fund because he did not wait 21 days between giving the Fund notice of his claim and filing his Claim Petition as required by Section 1603(d) of the Act, 77 P.S. § 2703(d). As stated previously, the Board rejected the WCJ's conclusion because the plain language of Section 1603 does not support such a bar. (Board Decision at 4.) Because the Fund does not contest this issue, we will not consider it here.

16

Board's finding that the Bureau's April 28, 2009 letter provided Claimant with knowledge that Employer was uninsured was not supported by the evidence.

We recently addressed the issue of whether a communication from the Bureau provided a claimant with knowledge that his employer was uninsured in Pennsylvania Uninsured Employers Guaranty Fund v. Workers' Compensation Appeal Board (Lyle), 91 A.3d 297 (Pa. Cmwlth. 2014). There, the claimant suffered a work injury in July 2008. Id. at 298. After failing to recover from his employer's automobile liability insurer, the claimant filed a claim petition against employer. The Bureau informed the claimant by letter on October 3, 2008 that his employer "may not have workers' compensation insurance." Id. Claimant then filed a claim petition against the Fund on October 28, 2008. Id. at 298-99. The WCJ and the Board held that the claimant had knowledge of his employer's lack of insurance when he attempted to recover from his employer's automobile insurance carrier. On appeal, we reversed and held that the WCJ applied the incorrect legal standard of when the claimant "should have known," instead of when the claimant obtained actual knowledge of his employer's insurance status. Id. at 303. We concluded that the Bureau's letter afforded the requisite knowledge even though it "did not expressly state that Employer did not have valid workers' compensation insurance." Id. at 304.

"[W]hether a claimant 'knew' [that his employer was uninsured] is a factual determination." Id. Here, the WCJ determined that Claimant was made aware that Employer was uninsured upon receipt of the April 28, 2009 letter from the Bureau and that the Notice of Claim, filed more than eight months later in January 2010,

17

was untimely because it was not filed within 45 days. (Fund Decision, FOF ¶¶ 2-3.) A review of the April 28, 2009 letter from the Bureau shows that the content therein provided Claimant with actual knowledge that Employer lacked workers' compensation insurance.[12] The April 28, 2009 letter from the Bureau informing Claimant that Employer "did not have workers' compensation insurance on the date of the alleged injury," (Bureau's Letter to Claimant (April 28, 2009), R.R. at 5a), is more definitive than the equivocal letter in Lyle, which we found to be sufficient to commence the 45-day notice period. Thus, we conclude that substantial evidence supports the WCJ's finding that Claimant was on notice as of April 28, 2009 that Employer was uninsured on the date of his alleged work injury; thus, the Notice of Claim filed with the Fund in January 2010 exceeded the 45-day requirement of Section 1603(b) of the Act.

---

[12] The Bureau's letter states, in its entirety:

The Bureau has received a Claim Petition (LIBC-362) for the above-named individual. Our research indicates that the employer did not have workers' compensation insurance on the date of the alleged injury. Therefore, the claimant may also wish to seek benefits from the Uninsured Employer Guaranty Fund (Fund).

To seek benefits from the Fund, a claimant must complete and file a Notice of Claim Against Uninsured Employer, Form LIBC-551. The claimant may seek an award of benefits against the Fund by filing a Claim Petition for Benefits from the Uninsured Employer Guaranty Fund and Uninsured Employer, Form LIBC- 550.

For your convenience, copies of Forms LIBC 550 and 551 are enclosed. If you have any questions about these forms, please contact the Helpline at the above number.

(Bureau's Letter to Claimant (April 28, 2009), R.R. at 5a.)

We must next determine the effect of Claimant's late filing. The WCJ held that Claimant's Claim Petition against the Fund was completely barred by the late filing. The Board disagreed and concluded:

> [T]he WCJ erred in finding that Claimant's Claim Petition against [the Fund] was barred by Section 1603 where he did not provide [the Fund] with timely notice of his claim. . . . Section 1603 provides that no compensation shall be paid or is due until notice is given. Further, after receiving notice, [the Fund] is to process the claim in accordance with the provisions of the Act. Thus, pursuant to the plain language of Section 1603, the failure of a claimant to provide timely notice does not act as a complete bar to compensation, but instead bars the claimant from receiving compensation until such time as he has provided [the Fund] with notice.

(Board Decision at 4.)

At issue here is the construction of the phrase: "[a]n injured worker shall notify the fund within 45 days after the worker knew that the employer was uninsured" when it is followed by "[n]o compensation shall be paid from the fund until notice is given," and that "[n]o compensation shall be due until notice is given." 77 P.S. § 2703(b).[13] Importantly, the statute does not provide that

_____

[13] The Bureau adopted a policy statement on January 20, 2007 "so that all parties [would] have a clear understanding of their rights and obligations under the act" until the Board promulgated regulations governing the Fund. 34 Pa. Code § 123.801. With respect to notice, the Bureau's policy states:

> (a) For purposes of Article XVI of the act (77 P. S. §§ -- ), an injured worker who seeks benefits from the Uninsured Employer Guaranty Fund (Fund) shall notify the Fund of a claim within 45 days from the date upon which the injured worker knew that the employer was uninsured.
>
> (b) Compensation will not be paid from the Fund until notice is given.

34 Pa. Code § 123.802. We note that the Board has yet to promulgate regulations.

compensation will not be paid "*unless* notice is given."  Instead, Section 1603(b) states that compensation will not be paid "*until* notice is given."  77 P.S. § 2703(b) (emphasis added).

The Board noted in its opinion that Section 1603(b) stands in contrast to other portions of the Act where the General Assembly enacted a complete bar to benefits by delineating between provisions providing that no compensation "shall be due until" notice is given and provisions stating that no compensation "shall be allowed unless" notice is given.  (Board Decision at 4 n.2.)  The Board pointed to Section 311 of the Act, which provides:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, **no compensation shall be due until such notice be given**, **and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.**

77 P.S. § 631 (emphasis added).  We have interpreted Section 311 as establishing a scheme where compensation is payable from the date of the disability if the claimant gives notice "within 21 days of the date he knew or should have known of the injury and its relationship to its employment."  Martincic v. Workmen's Compensation Appeal Board (Greater Pittsburgh International Airport), 529 A.2d 600, 602 (Pa. Cmwlth. 1987).  "If, however, the claimant gives notice after the 21 days has elapsed but within 120 days of the date he knew or should have known of his injury, compensation is then payable from the date that notice was given."  Id. According to the Board in the case *sub judice*, "if the legislature wanted to completely bar a claimant from receiving compensation for his failure to provide

20

[the Fund] with timely notice of his claim . . . it certainly could have done so by adding language" similar to Section 311 to Section 1603. (Board Decision at 4 n.2.)

We agree with the Board. The plain text of Section 1603(b) does not specifically bar a claimant who does not meet the 45-day notice requirement from ever receiving compensation from the Fund. Like the mandatory language of Section 311, which requires notice within 21 days, the intent of Section 1603(b) is to apprise the Fund "of the claim and to give the opportunity for a thorough investigation while the events are recent." Township of Upper Darby v. Workmen's Compensation Appeal Board, 417 A.2d 1319, 1321 (Pa. 1980). Unless the Fund is given the opportunity to investigate the claim while the events are recent, it will not be responsible for paying compensation incurred prior to notice being received by the Fund. Section 1603(b) does not serve as a bar to all compensation; instead, it strongly compels a claimant to quickly provide the Fund with notice by imposing a consequence for the delay. Accordingly, we hold that not providing the Fund with notice within 45 days of discovering that an employer is uninsured does not act as a complete bar to compensation, but like Section 311 of the Act, delays the provision of compensation to the date notice is given.

Claimant argues further that by interpreting Section 1603(b) in a manner that bars recovery for any lost wages or medical expense incurred prior to submission of an untimely claim, the above interpretation does not comport with the plain meaning of the statute. According to Claimant, such a reading would bar recovery for lost wages or medical expenses for any claim, whether timely or not. We

21

disagree. Our interpretation allows for compensation for past medical treatment or lost wages so long as a claimant notifies the Fund of the claim within 45 days. However, those that do not meet the statutory deadline are only entitled to compensation for medical treatment or lost wages incurred from the date notice was provided.

Finally, Claimant contends that by interpreting Section 1603(b) in a manner that causes a delay in benefits would only be warranted upon a showing that the Fund was substantially prejudiced. Claimant analogizes the Fund's obligation to automobile liability insurers' obligations under the "notice-prejudice rule." Under this rule, "unless the insurer establishes prejudice resulting from the insured's failure to give notice as required under the policy, the insurer cannot avoid its contractual obligation." Ario v. Underwriting Members of Lloyd's of London Syndicates, 996 A.2d 588, 598 (Pa. Cmwlth. 2010) (citing Brakeman v. Potomac Insurance Company, 371 A.2d 193, 198 (Pa. 1977)).

We decline to extend the "notice-prejudice rule," which has not been applied in the workers' compensation area, to actions involving the Fund. The cases in which this rule has been applied all involve situations where an insured is required under a contract to provide the insurer with notice "promptly," "as soon as practicable" or "within a reasonable time." See, e.g., Brakeman, 371 A.2d at 195 (requiring notice "as soon as practicable"); Ario, 996 A.2d at 598 (same); American States Insurance Company v. Estate of Braheem, 918 A.2d 750, 756 (Pa. Super. 2007) (requiring "prompt written notice"). In contrast to a vague deadline set in a contract between parties who freely entered into an agreement, Section

1603(b) is a statutory requirement that sets a clear 45-day notice requirement. Nowhere in Section 1603(b) does the General Assembly limit its application to instances where the Fund shows it was substantially prejudiced.

## IV.    Conclusion

In conclusion we reverse in part, and affirm in part, the Board's Order.  The Board erred when it held that Claimant's Claim Petition against the Fund was barred by Section 305(d) of the Act as a result of Claimant preserving his civil remedy by filing a "savings action" at law against an uninsured employer. However, the Board correctly concluded that Claimant did not entirely forfeit his Claim Petition against the Fund by not complying with the 45-day notice requirement set forth in Section 1603 of the Act.  We, therefore, reverse that portion of the Board's Order affirming the WCJ's Decision dismissing Claimant's Claim Petition against the Fund and remand this matter to the Board for further proceedings consistent with this opinion.  The Board's Order is affirmed in all other respects.

**RENÉE COHN JUBELIRER, Judge**

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jose Osorio Lozado,                          :
                                             :
                    Petitioner               :
                                             :
          v.                                 :    No. 21 C.D. 2014
                                             :
Workers' Compensation Appeal                 :
Board (Dependable Concrete Work              :
and Uninsured Employers Guaranty             :
Fund),                                       :
                                             :
                    Respondents              :

# **O R D E R**

**NOW**, August 5, 2015, the Order of the Workers' Compensation Appeal Board (Board), entered in the above-captioned matter, is **REVERSED** insofar as it relates to Jose Osorio Lozado's Claim Petition against the Uninsured Employers Guaranty Fund. This matter is **REMANDED** to the Board with directions for the Board to **REMAND** to a Workers' Compensation Judge to conduct further proceedings consistent with the foregoing opinion. The Board's Order is **AFFIRMED** in all other respects.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER, Judge**